UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION

| | | |
|---|---|---|
| ALL FLORIDA SAFETY INSTITUTE, LLC, | § | |
| Plaintiff | § | Case No.  3:21-cv-00650 |
| | § | |
| v. | § | |
| | § | |
| MIKE ALBERT LEASING, INC. | § | |
| D/B/A/ MIKE ALBERT FLEET SOLUTIONS, | § | |
| Defendant. | § | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, All Florida Safety Institute, LLC ("AFSI"), Plaintiff in this action, by and through its attorney, Shannan Collier Stalvey, and respectfully files this Verified Complaint, as follows:

## JURISDICTION AND VENUE

1. This is an action for damages arising out of a breach of contract between Plaintiff, a Florida limited liability company, and Defendant, a Delaware corporation.

2. Federal Courts may hear cases in which a citizen of one State sues a citizen of another State and the amount at stake is more than $75,000.

3. In this case, neither Plaintiff nor Defendant is a citizen of the same state and the total losses, damages, costs, and expenses (not including interest and court

costs) in this matter exceed $75,000; therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

4. This Court has proper venue, because all of the events giving rise to these claims arose in the Middle District.

## AMOUNT IN CONTROVERSY

5. This case is based upon an agreement between Plaintiff and Defendant for an alleged line of credit to acquire 15 Tesla vehicles and charges and losses arising from such agreement in an amount exceeding $75,000 before interest and court costs.

## PARTIES

6. Plaintiff is a limited liability company lawfully formed and operating in the State of Florida, and with a principle office located in St. Johns County, Florida.

7. Defendant is a Delaware corporation with a principal and registered agent address located in Cincinnati, Ohio.

## GENERAL ALLEGATIONS

8. Plaintiff has satisfied all conditions precedent, or they have been waived.

9. Plaintiff has hired the undersigned attorney and agrees to pay said attorney a fee.

10. Plaintiff requests a jury trial for all issues so triable.

All Florida Safety Institute, LLC v Mike Albert Leasing, Inc.
Verified Complaint                                                        Page 2

11. At all times material hereto, Defendant was and continues to be an enterprise engaging in "interstate commerce" within the meaning of the 18 U.S.C. §10.

12. In particular, Defendant is in the business of leasing fleet vehicles throughout the United States.

13. At all times relevant to this action, the annual gross sales volume of Defendant exceeded $500,000 per year.

## **FACTS**

14. Plaintiff reached out to Tesla for quotes and information regarding replacing and/or supplementing Plaintiff's fleet with approximately 25 to 30 Tesla vehicles (the "Vehicles").

15. During discussions, Tesla represented that it could immediately provide such Vehicles to Plaintiff.

16. At some point during discussions, Plaintiff expressed its desire to procure a line of credit to obtain the Vehicles.

17. A third party initiated an introduction between an agent of Plaintiff and Lars Nielsen, an agent of Defendant.

18. Mr. Nielsen reached out to Plaintiff, expressed his desire to help Plaintiff regarding its "growing fleet of vehicles" and that Defendant may "be able to help lower" Plaintiff's costs.

19. Mr. Nielsen expressly represented that Defendant would provide the alleged "line of credit."

20. In reality, it appears to have been structured in a manner that Defendant purchased the Vehicles and then engaged in a form of lease-purchase of the same to Plaintiff.

21. Believing Defendant to be reputable and to have knowledge of the Vehicles so desired by Plaintiff, Plaintiff reached out to Defendant to learn the specific terms of such transaction.

22. During discussions with Defendant, Plaintiff recounted its concerns with the feasibility of the Vehicles servings its actual needs in the daily driving requirements of Plaintiff's business operations.

23. Defendant represented that the Vehicles to be provided would have greater capacity to travel longer distances than previously experienced.

24. During discussions, Defendant further represented that Tesla was building additional express charging stations that would rapidly fully charge a Tesla vehicle, so that Plaintiff would not have to have at least a full hour of down-time per Vehicle at least once - if not multiple times - throughout the day.

25. During discussions, Defendant represented that the transaction would allow Plaintiff to receive the "Green Tax Credit," thus offsetting a large portion of the investment required to procure the Vehicles.

26. As a direct result of each of Defendant's representations and warranties, on or about June 14, 2019, Plaintiff provided Defendant with a copy of its Certificate of Liability Insurance.

27. Further, on or about August 5, 2019, Plaintiff completed Defendant's Fleet Application, applying to receive a new fleet of Tesla vehicles.

28. Defendant provided Plaintiff with a "Vehicle Quotation "VQ"" (the "VQ") dated September 20, 2019.

29. According to Plaintiff's records, said VQ was sent to Plaintiff from Defendant via DocuSign.

30. The VQ identifies Plaintiff as "Lessee" rather than borrower, references a Master Lease Agreement 201107 and a Disposal Agreement 201108, neither of which was provided to Plaintiff.

31. The VQ fails to identify a delivery date.

32. The VQ only references 1 Tesla Vehicle.

33. The VQ fails to itemize any "miscellaneous charges" of Defendant.

34. Plaintiff never received a Vehicle Lease Order referenced in the VQ.

35. Plaintiff never received the Services Agreement or Telematics Agreement referenced in the VQ.

36. Plaintiff was never provided any written contract for lease or purchase, terms of service, itemization of charges, or otherwise.

37. Based upon the conversation and representations, Plaintiff determined that it would be in Plaintiff's best interests to reduce to the number of the Vehicles to 15 and to forgo immediate acquisition and delivery of the Vehicles, and instead to acquire them in increments and commencing in April 2020.

38. As delivery was to be postponed until April 2020, the commencement of payments thereupon was delayed, as well.

39. Rather than postpone delivery, Defendant simply "dropped off" of a portion of the Vehicles in or about November and December 2019.

40. Plaintiff believes that it agreed to receive the first 5 Vehicles early, after insistence by Defendant to conclude the transaction; however, because Defendant left each of the Vehicles at Plaintiff's place of business without bill of lading or evidence or acceptance of delivery, Plaintiff is unable to confirm the actual dates on which the first 5 Vehicles were so delivered.

41. Additionally, Defendant began to demand payment for the Vehicles in or about October or November, 2019.

42. Rather than simply charging what was the understood and agreed-upon amount for the Vehicles (which, again, payment for which not proper until April 2020), Defendant's invoicing included additional, undefined, and unidentified "miscellaneous charges."

43. Having a new Chief Financial Officer appointed, Plaintiff, via said CFO, reached out to Defendant's agent, Keeley Carrick, collections specialist, requesting a breakdown of the invoiced amounts.

44. The primary purpose of the CFO's inquiry was to address the tens of thousands of dollars being charging as "miscellaneous charges" on invoicing from 2019 and early 2020 for the Vehicles.

45. Because invoicing was not properly itemized and because Defendant failed and refused to provide any explanation for "miscellaneous charges," Plaintiff does not know and cannot allege as to what Vehicles Defendant claims said charges apply.

46. Commencing in 2019, Defendant demanded past-due amounts from Plaintiff, notwithstanding the agreement to forgo payments until April 2020.

47. Because of Defendants misrepresentations regarding the performance of the Vehicles and undisclosed and undefined charges being made, Plaintiff asked that the last 10 Vehicles not be delivered.

48. Notwithstanding its representations to and agreements with Plaintiff, Defendant delivered vehicles to Plaintiff prior to and had delivered all 15 before the end of April 2020.

49. The last 10 Vehicles delivered by Defendant were not usable nor should Defendant have initiated any billing thereupon, as they were not complete.

50. Defendant was required to ensure that the Vehicles were usable by Plaintiff – they were required to have safety equipment installed and decals placed thereupon.

51. Said safety equipment was not only never installed, it was never delivered to Plaintiff for installation.

52. Because Plaintiff could not legally use the last 10 Vehicles, Plaintiff stored the same.

53. Plaintiff believes that Defendant's urgency in delivery of the entire 15 Vehicles relates to the Green Tax Credit.

54. At a point after delivery of the Vehicles, Defendant represented that Plaintiff was required to execute a subsequent document so that Plaintiff could receive the "Green Tax Credit" (previously discussed with Plaintiff) in the then-current tax year.

55. In fact, Defendant took and retained said Green Tax Credit, not allowing Plaintiff to receive the benefits thereof.

56. Defendant delivered at some point between October 2019 and April 2020, the following Vehicles:



| Unit # | VIN |
| --- | --- |
| 01028131 | 5YJ3E1EAXKF447011 |
| 01028136 | 5YJ3E1EA1KF436012 |
| 01028146 | 5YJ3E1EA8KF484123 |
| 01028127 | 5YJ3E1EA5KF483446 |
| 01028134 | 5YJ3E1EA9KF482901 |
| 01028135 | 5YJ3E1EA3KF484322 |
| 01028137 | 5YJ3E1EA8KF483375 |
| 01028138 | 5YJ3E1EA4KF435405 |
| 01028139 | 5YJ3E1EA4KF435551 |

| 01028140 | 5YJ3E1EA3KF435413 |
| 01028141 | 5YJ3E1EA7KF427041 |
| 01028142 | 5YJ3E1EA9KF484339 |
| 01028143 | 5YJ3E1EA4KF434884 |
| 01028144 | 5YJ3E1EA5KF484161 |
| 01028145 | 5YJ3E1EA9KF484258 |

57. Because Defendant did not provide any evidence or confirmation of delivery, Plaintiff is unable to identify which of the Vehicles was received on what date.

58. In January, February, and March, 2020, Defendant failed and refused to provide breakdown of the charges imposed upon Plaintiff by Defendant and for the amounts demanded in invoicing.

59. Ms. Carrick expressed her concern in electronic mail correspondence, as Plaintiff's CFO and Ms. Carrick attempted to resolve the issues and negotiate a remedy.

60. As a direct result of the significant and unsubstantiated charges being demanded by Defendant and Ms. Carrick's ongoing correspondence and work with Plaintiff, Plaintiff withheld payment in January and February 2020.

61. Discussions with Ms. Carrick resulted in Plaintiff remitting payments in March 2020 to "catch up" all payments to date and engage in efforts to amicably resolve what was becoming a contentious issue.

62. Thereafter, on or about April 1, 2020, Plaintiff remitted the payments properly due and owing for April and May 2020.

63. By the end of April 2020, Defendant was demanding payment of over $86,000 on its untimely and unsubstantiated invoicing for the Vehicles.

64. Plaintiff repeatedly expressed to Defendant that it required a complete accounting and breakdown of the charges demanded, with which request Defendant has yet to comply.

65. In or about March 2020, the Governor of the State of Florida, by Executive Emergency Order, demanded that non-essential businesses close operations and initiated severe restrictions on businesses which prevented Plaintiff from engaging in any operations.

66. Throughout March, April, and May 2020, Plaintiff was not operational.

67. Plaintiff reached out to its creditors and provided notice of the conditions imposed upon Plaintiff, for which each creditor, other than Defendant, provided accommodations.

68. As Defendant failed and refused to respond to Plaintiff's request for allowances during the Emergency Order, Plaintiff repeatedly contacted, left messages for, and reached out to Defendant.

69. Plaintiff continued to attempt to work with Defendant, in an effort to remedy the ongoing multitude of problems arising from Defendant's misrepresentations so made to Plaintiff, to no avail.

70. Plaintiff further learned that the 10 incomplete Vehicles could not be made operational for Plaintiff's purposes, as the safety equipment is manufactured in and delivered from Asia, and that such safety equipment still cannot be procured as of the date of this filing.

71. Plaintiff's President, Mark Allen, has been recognized as one of the premier new and used vehicle experts in the United States, including knowledge of wholesale values and retail sales and operations.

72. Using said knowledge, in the summer of 2020, Plaintiff identified and negotiated with a third party who offered to purchase the 10 incomplete Vehicles from Plaintiff at a price which would offset the balance properly due Defendant.

73. Plaintiff repeatedly attempted to procure Defendant's consent.

74. Both Plaintiff and the third party purchaser repeatedly attempted to procure the pay-off amount applicable to the 10 incomplete Vehicles from Defendant, to no avail.

75. On or about October 14, 2020, Ms. Carrick acknowledged Plaintiff's intention to sell the 10 incomplete Vehicles and requested identification of the same, to which Plaintiff replied virtually immediately.

76. Eventually, Defendant informed Plaintiff that Defendant had identified one or more purchasers of the 10 incomplete Vehicles who would remit payment greater than that promised by the third party to Plaintiff.

77. In direct reliance upon Defendant's statements, Plaintiff returned the 10 incomplete Vehicles to Defendant for sale in or about November 2020.

78. Mr. Nielsen, remained in text and electronic mail contact with agents for Plaintiff throughout 2019 and 2020, during which time he acknowledged Plaintiff's inability to use the Vehicles, Plaintiff's storage of the Vehicles, and Defendant's agreement to recovery the 10 incomplete Vehicles – each without issue or penalty charge.

79. Similarly, Ms. Carrick acknowledged in writing Plaintiff's intention to return the 10 incomplete Vehicles, agreed to such return of the 10 incomplete Vehicles, and requested information regarding the location of the same.

80. Recent history clearly reflects that, especially since the Covid-19 outbreak, Tesla vehicles commensurate to the Vehicles, although not operational for Plaintiff's purposes, sell for approximately 100 to 120% over list price.

81. Rather than sell for a greater amount to said predetermined purchasers, it is believed that Defendant sent the 10 incomplete Vehicles to auction, at which time the sale resulted in a substantial loss and after which time Defendant

commenced pursuit against Plaintiff for the difference, plus additional costs and expenses.

82. Records indicate that Defendant has further charged Plaintiff for costs and expenses not otherwise disclosed.

83. In or about May and June, 2021, Plaintiff placed each of the remaining 5 Vehicles in storage until reasonable resolution could be reached with Defendant.

84. Rather than discuss or disclose the information requested, Defendant sought repossession of the Vehicles.

85. During the repossession of said Vehicles, Defendant's agent stole a licensed, titled trailer owned by Plaintiff, notwithstanding said agent's knowledge of its ownership; and damaged another vehicle owned by an individual.

86. During the repossession of said Vehicles, Defendant's agents expressed to Plaintiff that they would return Plaintiff's trailer *if* Plaintiff surrendered the remaining Vehicles.

87. Defendant has further refused to cooperate with Plaintiff, resulting in Plaintiff incurring substantial cost, expenses, and legal fees and in being forced to allocate time to addressing Defendant's improper acts.

## COUNT I – BREACH OF CONTRACT

88. Plaintiff hereby incorporated paragraphs 1 through 87 as if fully restated herein.

89. After extensive negotiations and after Defendant confirmed its representations and warranties to Plaintiff, Defendant set forth its offer to provide Plaintiff with a line of credit to acquire the Vehicles.

90. Plaintiff agreed to what it understood was a line of credit from Defendant, which line of credit was not reduced to a writing produced to Plaintiff.

91. The parties had the capacity to enter into their agreement, which terms were legal and binding upon each.

92. In direct reliance upon the actual representations, promises, and covenants expressed by Defendant directly to Plaintiff, Plaintiff took possession of the Vehicles prior to the agreed-upon dates.

93. In direct reliance upon the actual representations, promises, and covenants expressed by Defendant directly to Plaintiff, Plaintiff commenced payment for the Vehicles prior to the agreed-upon dates.

94. At all times in their relationship, Defendant had a duty to act reasonably, responsibly, and professionally in the performance of its services to Plaintiff.

95. Subsequent to Plaintiff's reliance upon the representations, promises, and covenants expressed by Defendant, Defendant acted in contravention thereto.

96. Notwithstanding issuance from Plaintiff and from third parties of notice to Defendant of the outstanding issues, Defendant failed to respond to Plaintiff and said third parties in a timely manner (and still have not provided such information relating to the issues as of the date of this filing).

97. Notwithstanding issuance from Plaintiff of notice to Defendant of Defendant's improper acts, Defendant failed to cure the same.

98. Notwithstanding issuance from Plaintiff of notice to Defendant of Defendant's improper acts, Defendant continues to seek payment from Plaintiff of amounts allegedly owed to Defendant, but to which Plaintiff neither contracted nor agreed.

99. Notwithstanding issuance from Plaintiff of notice to Defendant of Defendant's improper acts, Defendant continues to seek payment from

Plaintiff of amounts allegedly owed to Defendant, but for which Defendant will not provide any basis.

100. Defendant has and continues to act in a manner contrary to the terms of their agreement and of the representations, warranties, and promises made by Defendant to Plaintiff.

101. As a direct result of Defendant's multiple and ongoing breaches of contract, Plaintiff has incurred calculable losses and damages.

102. The acts of the parties bound them to a contract under Title XXXIX of the Florida Statutes.

103. As Defendant made multiple representations, warranties, and promises and failed to comply with the same; and as such acts and failures to act have resulted in damage to Plaintiff, Defendant has committed a breach of contract under Title XXXIX of the Florida Statutes.

104. As Defendant breached its contract with Plaintiff, Defendant is liable to Plaintiff for actual damages due thereunder (Florida Statute Title XXXIX).

## COUNT II – BREACH OF DUTY, GOOD FAITH AND FAIR DEALING

105. Plaintiff incorporates paragraphs 1 through 104 as though fully set forth herein.

106. After Plaintiff executed Defendant's Contract, the parties were bound by a contract.

107. In the performance of its duties under the Contract, Defendant had a duty of good faith and fair dealing. See Florida Statute Section 671.203

All Florida Safety Institute, LLC v Mike Albert Leasing, Inc.
Verified Complaint                                                                    Page 13

108.     By causing Plaintiff extensive inconvenience, loss of revenue, and additional costs, expenses, and attorney's fees, Defendant failed to act with good faith and fair dealing.

109.     By continuing to charge Plaintiff for amounts not rightfully due and owing under their agreement, Defendant has failed to act with good faith and fair dealing.

110.     By continuing to pursue collection against Plaintiff for amounts allegedly due under the agreement, when Defendant has failed to fully or properly act under the agreement, Defendant has failed to act with good faith and fair dealing.

111.     As a direct result of Defendant's breach of good faith and fair dealing, Plaintiff has incurred calculable losses and damages.

## COUNT III – FRAUDULENT INDUCEMENT

112.     Plaintiff incorporates paragraphs 1 through 111 as though fully set forth herein.

113.     Defendant knowingly and purposely induced Plaintiff to enter into an agreement with Defendant, knowing that the Vehicles would not fulfil the minimum requirements set out by Plaintiff.

114.     Defendant knowingly and purposely induced Plaintiff to enter into an agreement with Defendant, knowing that the requirement of establishing charging stations for the Vehicles would not be met by Defendant or a third party.

115. Defendant knowingly and purposely induced Plaintiff to enter into an agreement with Defendant, knowing that Defendant intended to retain the Green Tax Credit.

116. Defendant knowingly and purposely induced Plaintiff to enter into an agreement with Defendant knowing that it would demand payment thereunder prior to the agreed upon date of April 2020.

117. Defendant knowingly and purposely induced Plaintiff to surrender the Vehicles for sale by Defendant, and represented that Plaintiff would incur no additional costs or expenses for such surrender.

118. Defendant knowingly and purposely induced Plaintiff to surrender the Vehicles for sale by Defendant, even though Defendant intended to sell the same in auction at a sale price substantially less than that already promised to Plaintiff by a third party.

119. Defendant knowingly and purposely induced Plaintiff to surrender the Vehicles for sale by Defendant, even though Defendant intended to charge Plaintiff additional fees and costs arising therefrom.

120. Defendant's acts arise to the level of a scheme to defraud Plaintiff, an outright lie, and/or misrepresentation and/or omission sufficient to mislead Plaintiff into believing something other than what was represented to Plaintiff.

121. Defendant's intentional acts have resulted in calculable damages to Plaintiff.

122. Defendant's acts knowingly and purposely resulted in detrimental reliance by Plaintiff, resulting in damages to Plaintiff, equating to a Fraud.

123. According to Florida Statutes Section 672.721, Plaintiff has the right to recovery from Defendant of all amounts and to receive all remedies available as are for a non-fraudulent breach by Defendant; and Plaintiff's

return of the Vehicles does not bar nor is deemed to be inconsistent with Plaintiff's claim for damages or other remedy.

## COUNT IV – FRUSTRATION OF PURPOSE

124. Plaintiff incorporates paragraphs 1 through 123 as though fully set forth herein.

125. Defendant knowingly and repeatedly made representations that each of the prerequisites of Plaintiff under the agreement was accepted by Defendant.

126. Defendant knowingly and repeatedly made representations that each of the prerequisites of Plaintiff under the agreement was to be fulfilled by Defendant.

127. Defendant knowingly and repeatedly made representations that each of the subsequent requests of Plaintiff under the agreement was accepted by Defendant.

128. After entering into an agreement with Defendant, Tesla failed to initiate the installation of booster charging stations, as Defendant promised, preventing the Vehicles from performing as required by Plaintiff.

129. By failing to travel over 250 miles prior to requiring charging for a minimum of time of one hour, the Vehicles are worthless to Plaintiff.

130. Plaintiff clearly conveyed that the Vehicles must travel at least 300 miles prior to requiring additional charge.

131. Defendant expressly conveyed that the installation of the booster charging stations would satisfy this requirement.

132. The occurrence of COVID-19, the suspension of the marketplace, and the Emergency Order were all completely unforeseeable.

133.    If Defendant was aware of the fact that the booster charging stations were not to be installed, then the event would not be unforeseeable, but would instead qualify as fraudulent inducement.

134.    The failure of the Vehicles to travel at least 300 miles per charge is not a matter of expense but a matter of one of the fundamental requirements of Plaintiff conveyed to Defendant prior to the parties agreement.

135.    As the booster charging stations were not installed and as the Vehicles are unable to travel over 250 miles per charge, Plaintiff has experienced a frustrated purpose which is so fundamental and essential to the Contract that, without it, the parties would have never entered into their transaction in the first place, making the agreement voidable.

136.    Defendant's acts and failures to act prevented Plaintiff from satisfying Plaintiff's obligations under the agreement.

137.    Plaintiff has incurred substantial monetary damages as a result of Defendant's improper acts and omissions.

138.    Plaintiff has incurred substantial damage to its reputation as a direct result of Defendant's improper acts and omissions.

139.    Plaintiff should be excused from any claims of breach of contract and default thereunder based upon Defendant's acts and omissions.

## COUNT V – TORITOUS INTERFERENCE WITH

## CONTRACTUAL RELATIONSHIPS

140.    Plaintiff incorporates paragraphs 1 through 139 as though fully set forth herein.

141. Defendant failed and refused to provide both Plaintiff and a third party with payoff information for the Vehicles.

142. Defendant misinformed Plaintiff that it would sell the Vehicles at a rate notably greater than that promised to Plaintiff from the third party.

143. Defendant further misrepresented that Defendant would not charge Plaintiff additional fees, costs, or expenses in recovering the Vehicles.

144. In direct reliance upon Defendant's representations and promises, Plaintiff surrendered 10 of the Vehicles to Defendant.

145. Rather than sell the Vehicles for $40,000 each, Defendant took them to auction, where they resulted in a nominal recovery.

146. Had Defendant not made such misrepresentations, Plaintiff would have sold the Vehicles to the third party.

147. Had Defendant provided Plaintiff or the third party with the payoff information requested, Plaintiff would have sold the Vehicles to the third party.

148. Defendant's acts and failures to act rise to the level of intentional tortious interference with business relations between Plaintiff and the third party.

149. Defendant's tortious interference with business relations gives Plaintiff the right to remedy therefore and recovery arising therefrom.

## COUNT VI – UNJUST ENRICHMENT

150. Plaintiff incorporates paragraphs 1 through 149 as though fully set forth herein.

151. Defendant induced Plaintiff to take possession of the Vehicles, which did not confirm to the standards represented by Defendant.

152. Defendant then prevented Plaintiff from effectuating a sale of the Vehicles to a third party, which would have garnered Plaintiff proceeds that would have been greater than the actual balance owed by Plaintiff to Defendant.

153. Rather than cooperate with Plaintiff, provide payoff amounts for the Vehicles, and allow such sale, Defendant misrepresented its ability to sell the Vehicles for a price greater than that offered to Plaintiff from the third party.

154. Rather than cooperate with Plaintiff, provide payoff amounts for the Vehicles, and allow such sale, Defendant misrepresented to Plaintiff that Defendant did not intend to charge Plaintiff for additional charges or expenses arising from such surrender of the Vehicles to Defendant.

155. Defendant sold the Vehicles, retained the Green Tax Credit, retained the funds derived from the sale of the Vehicles, and is attempting to charge Plaintiff for the difference alleged owed for the Vehicles.

156. Defendant's acts, if permitted, would result in substantial unjust enrichment to Defendant, for which Plaintiff has rights of recovery.

## COUNT VII - UNCLEAN HANDS

157. Defendants incorporate paragraphs 1 through 156 as though fully set forth herein.

158. The parties negotiated the terms of their agreement, but proceeded under terms and conditions modified without notice to Plaintiff by Defendant.

159.     Relying upon Defendant's representations, warranties, statements, and covenants, Plaintiff accepted delivery of the Vehicles.

160.     Relying upon Defendant's representations, warranties, statements, and covenants, Plaintiff remitted payment for such Vehicles.

161.     Relying upon Defendant's representations, warranties, statements, and covenants, Plaintiff returned possession of the Vehicles, rather than sell them to a third party for an amount greater than the debt owed to Defendant.

162.     Defendant engaged in multiple and repeated breaches of contract, tortious interference with contractual relations, and violations of the agreement, causing Plaintiff to incur calculable costs and expenses, and are acting in bath faith and with stubborn litigiousness.

163.     As a direct result of each of Defendant's improper acts and omissions, Plaintiff has been forced to incur substantial and definable costs and expenses in mitigating and addressing each of Defendant's improper acts, each to be disclosed and proven at Trial, for which Defendant is liable to Plaintiff for damages, costs and expenses and should not be permitted recovery against Plaintiff for any amounts allegedly owed under the agreement or otherwise.

## **COUNT IX - STUBBORN LITIGIOUSNESS**

164.     Plaintiff incorporates paragraphs 1 through 163 as though fully set forth herein.

165.     The parties negotiated the terms of their agreement.

166.     Relying upon Defendant's representations, warranties, statements, and covenants, Plaintiff proceeded under such terms.

167.     Defendant engaged in acts performed purposely and knowingly.

All Florida Safety Institute, LLC v Mike Albert Leasing, Inc.
Verified Complaint                                                    Page 20

168. Defendant engaged in acts that are improper and wrongful without privilege.

169. Defendant engaged in acts and omissions with malice and the intent to injure.

170. Defendant's acts and omissions are breaches of contract, fraudulent, and/or rise to tortious interference with business relationships.

171. As a direct result of Defendant's improper acts and representations Plaintiff has incurred calculable losses and damages, the amount of which shall be disclosed and proven at Trial.

172. Plaintiff has repeatedly attempted amicable resolution of the outstanding issues; however, Defendant has continuously and repeatedly taken steps so as to create additional costs and expenses and prevent Plaintiff and Defendant from resolving the matters herein addressed.

173. Defendant is acting with stubborn litigiousness giving rise to the recovery of damages.

## **CONCLUSION**

174. Each of Defendant's acts was performed purposely and knowingly.

175. Each of Defendant's acts was improper and wrongful without privilege.

176. Defendant's acts and omissions were performed with malice and the intent to injure.

177. Defendant's acts and omissions are breaches of contract, fraudulent, and/or tortious interference with business relationships.

178.     As a direct result of Defendant's improper acts and representations Plaintiff has incurred calculable losses and damages, the amount of which shall be disclosed and proven at Trial.

179.     As a direct result of Defendant's improper acts and representations Plaintiff continues to incur losses and damages which are currently incalculable.

180.     As a direct result of Defendant's multitude of improper acts and omissions, Plaintiff has been forced to incur substantial and definable damages, costs, and expenses in addressing the same, to be disclosed and proven at Trial, for which Defendant is liable to Plaintiff.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff requests judgment against Plaintiffs for Breach of Contract, Fraud, Tortious Interference with Business Relations, Stubborn Litigiousness, and Unclean Hands, each in an amount to be proven at Trial, plus statutory interest thereupon from January 1, 2020, and all court costs, attorneys' fees, and expenses incurred by Plaintiff in this matter; and

**WHEREFORE,** Plaintiff prays for any and all additional relief this Court deems just and proper.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

This the 28th day of June, 2021.

By: /Shannan Collier Stalvey/
**SHANNAN COLLIER STALVEY**
Florida Bar No. 0992313
Attorney for Plaintiff
The Law Office of Shannan S. Collier, PC
100 Galleria Parkway, Suite 1010, Atlanta, Georgia  30339
Phone: 404/419-7113; Fax: 404-537-3254
shannan@sscollier.com